1

2

3

4

5

6

**FILED**

**2006 SEP 11  AM 8:55**

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

7

8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,

11                          Plaintiff/Respondent,

12       v.

13  RAMIRO RUIZ-MALDONADO,

14                          Defendant/Petitioner.

15

Civil No. 05cv2171-J
Crim. No. 02cr0050-J

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2255**

16       Before the Court is pro se Petitioner Ramiro Ruiz-Maldonado's 28 U.S.C. § 2255

17  Petition for Writ of Habeas Corpus.  On September 19, 2003, pursuant to a plea agreement,

18  Petitioner pled guilty to a superseding information charging him with conspiracy to

19  manufacture a controlled substance, in violation of 21 U.S.C. § 846. (*See* Plea Agreem't at 2.)

20  On October 25, 2004, this Court sentenced Petitioner to eighty-four months in prison with five

21  years of supervised release. (*See* Gov't's Opp'n, Ex. E at 7.)  Petitioner did not appeal the

22  sentence.  On November 22, 2005, Petitioner, proceeding pro se, filed the instant Petition

23  asking this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

24  [Doc. No. 719.]  This Court issued an Order to Show Cause Why Petition for Writ of Habeas

25  Corpus Should Not Be Granted. [Doc. No. 728.]  On March 27, 2005, Respondent United

26  States of America timely filed a Response and Opposition to the Petition. [Doc. No. 731.]  To

27  date, Petitioner has not filed a traverse.  For the reasons addressed below, the Court **DENIES**

28

1   the Petition.

2

3                              *Background*

4          In 2001, an investigation conducted by the U.S. Drug Enforcement Administration

5   revealed that Petitioner was taking part in a conspiracy to possess and distribute large

6   quantities of pseudoephedrine knowing that it would be used to manufacture

7   methamphetamine. (*See* Gov't's Opp'n at 3.)  On September 19, 2003, pursuant to a plea

8   agreement, Petitioner pled guilty to a superseding information charging him with conspiracy

9   to manufacture a controlled substance, in violation of 21 U.S.C. § 846. (*See* Plea Agreem't at

10  2.)  The plea agreement contained the following waiver:

11              In exchange for the Government's concessions in this plea agreement,

12              defendant waives, to the full extent of the law, any right to appeal or to

13              collaterally attack the conviction and sentence including any restitution order,

14              unless the court imposes a custodial sentence greater than the high end of the

15              guideline range (or statutory mandatory minimum term, if applicable)

16              recommended by the Government pursuant to this plea agreement at the time

17              of sentencing.  If the custodial sentence is greater than the high end of that

18              range, defendant may appeal, but the Government will be free to support or

19              appeal the sentence actually imposed.  If defendant believes the Government's

20              recommendation is not in accord with this plea agreement, defendant will

21              object at the time of sentencing; otherwise the objection will be deemed

22              waived."

23  (Plea Agreem't at 11.)

24          The Plea Agreement also contained a clause in which Petitioner acknowledged that he

25  had read it and that he had "discussed [its] terms ... with defense counsel and fully

26  [understood] its meaning and effect." (*Id.* at 12.)  Finally, the Plea Agreement included a

27  clause that stated the elements of the offense to which Petitioner was pleading guilty and

28  conveyed Petitioner's understanding that the offense contained those elements. (*See id.* at 2.)

1    At the disposition hearing, this Court carefully reviewed with Petitioner his rights, the
2  Plea Agreement, and the effect of the Plea Agreement. (*See* Gov't's Opp'n, Ex. B.)   In
3  response to the Court's inquiry, Petitioner stated affirmatively that the plea agreement had been
4  read and explained to him in Spanish, that he understood all the statements and answers
5  contained in the Plea Agreement, and that he had no questions concerning the Agreement. (*See*
6  *id*. at 8.) Petitioner also stated that counsel had explained each constitutional and trial right he
7  would be waiving by entering the Plea Agreement, that he had enough time to discuss the case
8  with counsel, and that he was satisfied with his counsel's representation. (*See id*. at 14, 17, 20.)
9  Additionally, Petitioner indicated that he was entering the Plea Agreement freely and
10  voluntarily. (*See id*. at 17.)   The Government stated for the record all the elements or facts it
11  would have to prove beyond a reasonable doubt to establish Petitioner's guilt in the offense.
12  (*See id*. at 9-13.)

13    At the end of the disposition hearing, this Court concluded Petitioner was "in full
14  possession of his faculties, [understood] the nature of the proceedings, the consequences of the
15  plea of guilty, [understood] his constitutional and trial rights, [and had] knowingly and
16  intelligently given up and waived those rights." (*See id*. at 21.)   Based on this finding, the
17  Court accepted Petitioner's plea of guilty and ordered a pre-sentence investigation to be
18  conducted. (*See id*. at 21.)

19    On October 21, 2004, Petitioner's counsel filed objections to the Presentence Report,
20  including an objection that the amount or quantity of pseudoephedrine should have been
21  determined by a jury. (*See* Gov't's Opp'n, Ex. D.)   Petitioner's counsel also filed a sentencing
22  summary chart. (*See* Gov't's Opp'n, Ex. C.)

23    On October 25, 2004, Petitioner was sentenced by this Court to eighty-four months in
24  prison with five years of supervised release. (*See* Gov't's Opp'n, Ex. E at 7.)   The Court
25  concluded that Petitioner fell within a guideline range of 84 to 105 months due to Petitioner's
26  criminal history score of 7 and total offense level of 25. (*See id*.)   The total offense level of 25
27  was the result of a base offense level of 30, with a two-level downward adjustment for "minor
28  role," and a three-level downward adjustment for "timely acceptance of responsibility." (*See*

- 3 -                              05cv2171-J / 02cr0050-J

1   *id.*)  On Respondent's Motion, the Court dismissed the underlying indictment. (*See id.* at 9.)

2       Additionally, at the sentencing hearing, this Court inquired if Petitioner's counsel,

3   Joseph La Costa, Esq., had discussed the related documents with Petitioner prior to sentencing.

4   (*See* Gov't's Opp'n, Ex. E at 3.)  Mr. La Costa affirmatively stated that he had "gone over the

5   different reports from the Probation Department and the U.S. Attorney's position and our

6   position with [Petitioner]." (*Id.*)

7

8                                   *Legal Standard*

9       "A prisoner in custody under sentence of a court . . . claiming . . . that the sentence was

10   imposed in violation of the Constitution or laws of the United States . . . may move the court

11   which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255

12   (2006).

13

14                                   *Discussion*

15   **I.    Statute of Limitations**

16       A petitioner has one year to file a motion under 28 U.S.C. § 2255.  It is from the latest

17   of four possible dates that the one-year period shall run:

18           1) the date on which the judgment of conviction becomes final; 2) the date on

19           which the impediment to making a motion created by governmental action in

20           violation of the Constitution or laws of the United States is removed, if the

21           movant was prevented from making a motion by such governmental action; 3)

22           the date on which the right asserted was initially recognized by the Supreme

23           Court, if that right has been newly recognized by the Supreme Court and made

24           retroactively applicable to cases on collateral review; or 4) the date on which

25           the facts supporting the claim or claims presented could have been discovered

26           through the exercise of due diligence.

27   28 U.S.C. § 2255; *United States v. Battles*, 362 F.3d 1195, 1196 (9th Cir. 2004).

28       Here, Petitioner does not contend, nor does it appear, that the government created an

                                        - 4 -

1    impediment to filing his Petition.  Similarly, the Petition is not based on discoverable facts, but

2    rather, legal argument.  Furthermore, the Supreme Court did recognize on January 12, 2005,

3    that findings of fact relied on for sentencing enhancement fall under the Sixth Amendment

4    right to trial by jury and that, therefore, the federal sentencing guidelines are advisory.

5    However, the U.S. Court of Appeals for the Ninth Circuit has held that "*Booker* does not apply

6    retroactively to convictions that became final prior to its publication"; the majority of federal

7    circuits have held the same. *United States v. Cruz*, 423 F.3d 1119-1120 (9th Cir. 2005); *accord*

8    *United States v. Bellamy*, 411 F.3d 1182 (10th Cir. 2005); *Lloyd v. United States*, 407 F.3d

9    608, 615-16 (3d Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 143-144 (2d Cir. 2005);

10   *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005); *Valera v. United States*, 400

11   F.3d 864 (11th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005).

12   Therefore, the applicable one-year limitations period ran from "the date on which the judgment

13   of conviction [became] final." 28 U.S.C. § 2255.

14        On October 25, 2004, this Court entered judgment against Petitioner, and Petitioner has

15   not filed a direct appeal. [Doc. No. 614.]  Consequently, his judgment became final after the

16   expiration of the ten-day period during which he could appeal, or on November 4, 2004.

17   Petitioner must have filed this Petition by November 4, 2005, in order for it to have been

18   timely.[1]  Since Petitioner did not file this Petition until November 22, 2005 [Doc. No. 719], this

19   Court **FINDS** that this Petition is barred by the statute of limitations.[2]

20

21   **II.    Waiver of Right to Collateral Attack**

22        Respondent contends Petitioner waived his right to collaterally attack his sentence in

23   his Plea Agreement. (*See* Resp. and Opp'n at 7.)  For the reasons addressed below, the Court

24   **FINDS** that Petitioner's waiver of appellate rights was valid and enforceable, and that

25   _____

26   [1] Petitioner has not raised any "extraordinary circumstances beyond [Petitioner's] control [making]

27   it impossible to file a petition on time," such that he might be entitled to equitable tolling. *Battles*,
     362 F.3d at 1197 (internal quotations and citations omitted).

28

     [2] The Court nonetheless reviews the Petition on the merits.

05cv2171-J / 02cr0050-J

1   Petitioner waived all claims raised in his Petition, with the exception of his allegations of

2   ineffective assistance of counsel.

3       A defendant may effectively waive a statutory right to appeal his sentence. *See United*

4   *States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990); *United States v. Baramdyka*, 95

5   F.3d 840, 843 (9th Cir. 1996.) "[E]nforcement of appeal waivers serves an important function

6   in the judicial administrative process by 'preserving the finality of judgments and sentences

7   imposed pursuant to valid plea agreements.' " *Baramdyka*, 95 F.3d at 843 (citations omitted).

8   Generally, the court will enforce a defendant's waiver "of his right to appeal if 1) the language

9   of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal,

10  and 2) the waiver is 'knowingly and voluntarily made.' " *United States v. Martinez*, 143 F.3d

11  1266, 1270-71 (9th Cir. 1998) (citations omitted); *see also United States v. Nunez*, 223 F.3d

12  956, 958 (9th Cir. 2000).

13

14      A. <u>Language of the Waiver</u>

15      In reviewing a waiver of appellate rights, a court should first focus on the language of

16  the waiver to determine its scope. *See Baramdyka*, 95 F.3d at 843.  In doing so, contract

17  principles apply, including the parole evidence rule. *See Nunez*, 223 F.3d at 958.  "Under the

18  parole evidence rule, a court looks to, and enforces, the plain language of a contract and does

19  not look to 'extrinsic evidence . . . to interpret . . . the terms of an unambiguous written

20  instrument.' " *Nunez*, 223 F.3d 958 (citing *Wilson v. Arlington Co. v. Prudential Ins. Co. of*

21  *Am.*, 912 F.2d 366, 370 (9th Cir. 1990).)

22      The waiver provision of Petitioner's plea agreement is broad and unambiguous.

23  Specifically, the plea agreement signed by both Petitioner and his counsel states:

24          In exchange for the Government's concessions in this plea agreement,

25          defendant waives, to the full extent of the law, any right to appeal or to

26          collaterally attack the conviction and sentence . . . unless the court imposes

27          a custodial sentence greater than the high end of the guideline range . . .

28          recommended by the Government pursuant to this plea agreement at the

1    time of sentencing . . . .

2  (Resp. & Opp'n Ex. A at 11.)

3    The language of this waiver is unmistakable in its terms and explicitly encompasses all

4  collateral attacks to a conviction, including the instant Petition filed under 28 U.S.C. § 2255.

5  *See United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005) (holding that a plea

6  agreement stating " '[defendant] waives any and all rights to appeal' " encompassed the right

7  to a petition pursuant to 28 U.S.C. § 2255) (emphasis omitted); *Nunez*, 223 F.3d at 959

8  (holding that a plea agreement stating defendant " 'knowingly and voluntarily waives' his

9  'right to appeal any sentence imposed by the Court' " was unmistakable and unambiguous);

10  *Martinez*, 143 F.3d at 1270 (upholding a waiver of appellate rights in a plea agreement that

11  stated: "Defendant knowingly . . . agrees to file no motion, appeal or collateral attack . . .

12  regarding any aspect of his sentencing.") Therefore, the Court **FINDS** that the language of the

13  waiver in Petitioner's plea agreement encompassed his right to file a habeas petition under §

14  2255.

15

16    B. Knowing and Voluntary Waiver

17    Additionally, an express waiver of the right to appeal in a negotiated plea agreement

18  will be valid only upon a determination that such waiver is knowingly and voluntarily made.

19  *See United States v. DeSantiago-Martinez*, 38 F.3d 394, 395 (9th Cir. 1992).  In determining

20  whether Petitioner knowingly and voluntarily agreed to the terms of the plea agreement, "the

21  court looks to the circumstances surrounding the signing and entry of the plea agreement."

22  *Baramdyka*, 95 F.3d at 843.

23    In this case, the circumstances surrounding Petitioner's waiver of appellate rights

24  indicate a knowing and voluntary waiver of those rights.  First, Petitioner entered into a written

25  plea agreement upon the advice and consent of his attorney. (*See* Plea Agreem't at 1.)  Second,

26  the plea agreement itself stated that Petitioner knowingly and voluntarily entered into the

27  agreement. (*See* Plea Agreem't at 6-7.)  Additionally, at the disposition hearing, Petitioner

28  raised no objection with regard to the contents of the plea agreement. (*See* Gov't's Opp'n, Ex.

1   B at 10-21.) Further, this Court questioned Petitioner as to a waiver of appellate rights, asking

2   Petitioner whether he understood "[t]hat [he] and the government would have a right to appeal

3   from the sentence unless [he] waive[d] [his] right to appeal under the plea agreement and the

4   terms of the plea agreement [were] complied with." (Gov't's Opp'n, Ex. B at 19-20.)

5   Petitioner responded that he affirmatively understood his appellate rights that would be

6   affected by the plea agreement. (*See id.*) Thus, at the conclusion of the disposition hearing,

7   this Court concluded Petitioner was in full possession of his faculties, understood the nature

8   of the proceeding and the consequences of pleading guilty, understood his constitutional and

9   trial rights, and knowingly and intelligently waived those rights. (*See id.* at 21.) Based on the

10   foregoing, this Court **FINDS** that Petitioner knowingly and voluntarily waived his right to

11   appeal in the plea agreement.

12

13           C. Petitioner's Claim of Ineffective Assistance of Counsel

14           This Court's finding that Petitioner knowingly and voluntarily waived his appellate

15   rights, however, does not "categorically foreclose[]" him from bringing a § 2255 petition. *See*

16   *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). The Ninth Circuit has indicated

17   a valid and effective waiver will not preclude claims of ineffective assistance of counsel or

18   involuntary waiver that are brought in these petitions. *See Nunez*, 223 F.3d at 959 (holding "a

19   general waiver of appeal in a plea agreement does not waive the right to bring a 2255 motion

20   unless it does so expressly") (citations omitted); *Jeronimo*, 398 F.3d at 1156 n.4 (noting "we

21   do not decide whether even an express waiver of 2255 rights could be enforced to preclude an

22   ineffective assistance claim implicating the voluntariness of the waiver itself"); *United States*

23   *v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (expressing doubt that a plea agreement could waive

24   a claim of ineffective assistance of counsel, but declining to reach the issue).

25           In this case, the broad waiver language in the plea agreement does not explicitly waive

26   the right to appeal through a § 2255 petition. Further, the instant Petition contains multiple

27   claims of ineffective assistance of counsel. (*See* Pet. at 6.) Therefore, the Court **FINDS** that

28   Petitioner is not foreclosed from bringing a § 2255 petition on grounds of ineffective assistance

1    of counsel.  However, the Court also **FINDS** that Petitioner has waived all other claims he

2    raises in the Petition by his valid and effective waiver of appellate rights in the plea

3    agreement.[3]

4

5    III.    <u>Review of the Petition on the Merits</u>

6              A. *United States v. Booker*

7              Petitioner alleges that "this Honorable Court's [sic] violated his right to have a fair

8    sentencing hearing prior to imposing such harsh steep [sic] sentence of 84-months [sic] which

9    violated the Supreme Court ruling under 'Booker'[sic]." (Pet. at 5.)  In *United States v.*

10   *Booker,* the U.S. Supreme Court held that "[a]ny fact (other than a prior conviction) ...

11   established by a plea of guilty or a jury verdict must be admitted by the defendant and proved

12   to a jury beyond a reasonable doubt." *Booker*, 543 U.S. 220, 224 (2005).  As already discussed

13   above, the U.S. Court of Appeals for the Ninth Circuit has held that "*Booker* does not apply

14   retroactively to convictions that became final prior to its publication"; the majority of federal

15   circuits have held the same. *United States v. Cruz*, 423 F.3d 1119-1120 (9th Cir. 2005); *accord*

16   *United States v. Bellamy*, 411 F.3d 1182 (10th Cir. 2005); *Lloyd v. United States*, 407 F.3d

17   608, 615-16 (3d Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 143-144 (2d Cir. 2005);

18   *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005); *Valera v. United States*, 400

19   F.3d 864 (11th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005.)

20             To the extent that Petitioner intends for this Court to apply *Booker's* holdings to his

21   conviction, *Cruz* has stated that *Booker* does not apply retroactively to convictions. *See Cruz,*

22   423 F.3d at 1119.  *Booker* was decided on January 12, 2005. *See Booker*, 543 U.S. at 220.

23   Because Petitioner's conviction became final on October 25, 2004 [Doc. No. 614], *Booker*

24

25   _____

26   [3] Based on this finding, the Court could dismiss, without addressing the merits, the following
     claims made by Petitioner in his Petition: 1) that his sentence was imposed under unconstitutional

27   sentencing guidelines according to *United States v. Booker*; and 2) that this Court violated Federal
     Rule of Criminal Procedure 32 (i)(1)(A) by failing to ascertain whether Petitioner and his defense

28   counsel had read and discussed the presentence report prior to sentencing. (*See* Pet. at 5-8.)  The
     Court nonetheless reviews these claims on the merits.

1   does not apply.  Thus, this Court **FINDS** that *Booker* is inapplicable to Petitioner's guilty plea.

2

3       B. Ineffective Assistance of Council

4       Petitioner asserts that his trial attorney rendered ineffective assistance of counsel for a

5   number of reasons.  First Petitioner alleges "that proir [sic] to the entry of the plea of guilty

6   defense counsel failed to explain the nature of the charge against him and never read the plea

7   agreement prior to him signing such plea." (Pet. at 6.) Second, "at sentencing [defense counsel]

8   failed to argue such harsh increase of his sentence and failed to even read or discuss[] the

9   presentence report to him prior to sentencing." (*Id.*)  Third "[d]efense counsel failed to file an

10  appeal even after [Petitioner] requested from him to appeal his sentence."[4] (*Id.* at 5.)

11      Claims of ineffective assistance of counsel must meet the rigorous standard of

12  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prevail on such a claim, Petitioner

13  must satisfy two requirements.  First, Petitioner must overcome the strong presumption that

14  counsel's performance fell below an objective standard of reasonableness and was deficient.

15  *See id.* at 688-89.  "This requires showing that counsel made errors so serious that counsel was

16  not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at

17  687.  Second, Petitioner must show that the deficient performance prejudiced the defense. *See*

18  *id.*  Because Petitioner's claim arises out of a guilty plea, Petitioner can only show prejudice

19  _____

20  [4] In accordance with its duty to construe pro se motions and pleadings liberally (*see, e.g., Bernhardt
    v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003)), the Court **CONSTRUES** as a claim by
21  Petitioner that his attorney failed to file an appeal, despite his request to that he do so, numerous
    statements that he asserts throughout the Petition, including the following: 1) "[Petitioner] was
22  adviced [sic] by his defense counsel that he have [sic] no chance to appeal his sentence/conviction"
    (Pet. at 5); 2) "[Petitioner] had bad advice from his defense counsel when he told him that he have
23  [sic] no such chance to file for an appeal even so [sic] he requested from his counsel to file [sic] for
    an appeal of his sentence which he failed to comply with his request [sic] to raise the above
24  mentioned [sic] issue" (*id.* at 6); 3) "[b]ecause defense counsel failed to file for an appeal as
    requested by [Petitioner]" (*id.* at 7); 4) "[Petitioner] stated that he was deprived of his right to
25  appeal his sentence and conviction for the simple reason [that] his defense counsel failed to file for
    an appeal with this Honorable Court as he requested" (*id.* at 8); 5) "[Petitioner] could not raise the
26  above issue because such information was not available to him when his counsel failed to file an
    appeal (*id.*); and 9) "[d]efense counsel [sic] failure to comply with [Petitioner's] request to raise
27  any and all of the above issue prevented him to raised [sic] him on appeal" (*id.* at 9).
28

- 10 -

1   if "there is a reasonable probability that, but for counsel's errors he would not have pleaded

2   guilty and would have insisted on going to trial." *Hill v. Lockhard*, 474 U.S. 52, 59 (1985); *see*

3   *also Langford v. Day*, 110 F.3d 1380, 1386 (9th Cir. 1997).

4   In the present case, Petitioner alleges that prior to entering his guilty plea, his counsel

5   did not explain the charges against him or read the plea agreement. (*See* Pet. at 6.) However,

6   the record is clear that both Petitioner's counsel and the Court fully advised Petitioner of the

7   charge against him and the terms and consequences of the Plea Agreement. On the signed Plea

8   Agreement, Petitioner acknowledged that he had read it or that it was read to him in his native

9   language, and that he had "discussed the terms of [it] with defense counsel and fully

10   [understood] its meaning and effect." (Plea Agreem't at 12.) Petitioner initialed the page of

11   the Plea Agreement that included a clause stating the elements of the offense to which

12   Petitioner was pleading, and indicating Petitioner's understanding that the offense contained

13   these elements. (*See id.* at 2.)

14   At the disposition hearing, Petitioner was once again informed of the charges against

15   him when the Court asked the Government to state all the elements or facts it would have to

16   prove beyond a reasonable doubt to establish Petitioner's guilt in the offense. (*See* Gov't's

17   Opp'n, Ex. B. at 9-13.) Additionally, this Court conducted a detailed inquiry to verify that

18   Petitioner understood the terms and consequences of entering the Plea Agreement. (*See id.*, Ex.

19   B.) The Court asked Petitioner, "[B]efore you put your signature on the [Plea Agreement] did

20   you have it read and explained to you in Spanish and did you understand all of the statements

21   and answers that are in this plea agreement?" (*See id.* at 8.) Petitioner affirmatively answered

22   that he had read it, understood its terms, and had no questions. (*See id.*) Petitioner also stated

23   that he understood, and counsel had explained, each constitutional and trial right he would be

24   waiving by entering the Plea Agreement. (*See id.* at 14.) Moreover, Petitioner affirmatively

25   answered that he had had enough time to discuss the case with his attorney, Mr. La Costa, and

26   that he was satisfied with Mr. La Costa's representation of him. (*See id.* at 17, 20.) Therefore,

27   the record supports the presumption that Petitioner's counsel was effective in informing

28   Petitioner of the charges he was facing and in explaining the Plea Agreement to him.

- 11 -

1       Further, Petitioner has not demonstrated that he has suffered any prejudice as a result

2  of his counsel's actions.  The record does not show, nor does Petitioner argue, that but for

3  counsel's actions, he would have insisted on going to trial instead of signing a plea agreement.

4  Therefore, Petitioner's claim for ineffective assistance of counsel on this ground is **DENIED**.

5       Petitioner also alleges that at sentencing his counsel failed to argue "such harsh increase

6  of his sentence and failed to even read or discuss the presentence report to him prior to

7  sentencing." (Pet. at 6.)  Yet, in contrast to Petitioner's claims, the record well documents

8  counsel's efforts on behalf of Petitioner as regards his sentence.  Prior to sentencing,

9  Petitioner's counsel filed a sentencing summary chart as well as objections to the Presentence

10  Report. (*See* Gov't's Opp'n, Exs. C, D.)  At the sentencing hearing, this Court took into

11  consideration these objections when determining Petitioner's sentence. (*See id.*, Ex. E.)

12       The record also demonstrates that Petitioner's counsel read and discussed the

13  presentence report with Petitioner prior to sentencing.  At the sentencing hearing, the Court

14  asked Petitioner's attorney, Mr. La Costa, whether he had discussed the related documents (the

15  probation officer's report, defendant's objections to the probation officer's report, addendum

16  to the probation officer's report, and government's sentencing summary chart) with Petitioner.

17  (*See id.*) Mr. La Costa, affirmatively stated that he had "gone over the different reports from

18  the probation department and the U.S. Attorney's position and our position with [Petitioner]."

19  (*Id.*)  Thus, the record again supports the presumption that counsel adequately supported

20  Petitioner in sentencing.  Furthermore, as with the first claim, Petitioner has not demonstrated

21  that he suffered any prejudice as a result of counsel's actions.  Therefore, Petitioner's claim

22  for ineffective assistance of counsel on this ground is also **DENIED**.

23       Finally, Petitioner alleges that "[d]efense counsel failed to file an appeal even after

24  [Petitioner] requested from him to appeal [sic] his sentence." (Pet. at 5.)  However, Petitioner

25  fails to cite any legitimate claim that could have been raised on appeal.  As already explained

26  above, Petitioner signed a plea agreement in which he waived any right to appeal or collaterally

27  attack his conviction and sentence unless the court imposed a sentence in excess of the upper

28  limit of the guideline range. (*See* Plea Agreem't at 11.) Petitioner's sentence of 84 months was

1  well below that limit for an Offense Level of 30, which carries an 84- to 105-month range.

2       As with the first two claims, Petitioner had not demonstrated that he has suffered any

3  prejudice as a result of his counsel's actions.  Therefore, Petitioner's claim for ineffective

4  assistance of counsel on this ground is also **DENIED**.

5

6       C. <u>Violation of Federal Rule of Criminal Procedure 32(i)(1)(A)</u>

7       Petitioner alleges that this Court "failed to comply with sentencing Rule (32)." (Pet. at

8  8.) Specifically, he claims that "this Honorable court failed to ascertaine [sic] if the defendant

9  and his defense counsel [had] read and discussed the presentence report prior to sentencing."

10  (*Id.*)  Petitioner appears to be referencing Federal Rule of Criminal Procedure 32(i)(1)(A),

11  which provides that, at sentencing, a court "must verify that the defendant and the defendant's

12  attorney have read and discussed the presentence report and any addendum to the report."

13  Contrary to Petitioner's contention, this Court did verify at sentencing that Petitioner and his

14  attorney had read and discussed the presentence report. (*See* Gov't's Opp'n, Ex. E at 3.)

15  Specifically, the Court asked Petitioner's attorney, Mr. La Costa, whether he had discussed the

16  related documents (the probation officer's report, Petitioner's objections to the probation

17  officer's report, the addendum to the probation officer's report, and Respondent's sentencing

18  summary chart) with Petitioner. (*See id.*)  Mr. La Costa affirmatively stated that he had "gone

19  over the different reports from the probation department and the U.S. Attorney's position and

20  our position with [Petitioner]." (*See id.*)  Thus, the record shows that this Court did verify that

21  Petitioner had discussed the presentence report with his attorney prior to sentencing; therefore,

22  this Court **FINDS** that it did not violate Federal Rule of Criminal Procedure 32(i)(1)(A).

23  //

24  //

25  //

26  //

27  //

28  //

05cv2171-J / 02cr0050-J

*Conclusion*

For the foregoing reasons, and because Petitioner fails to prevail on any claim for relief, the Court **DENIES** the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255.

**IT IS SO ORDERED.**

DATED: 9-8-06

NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties

- 14 -

05cv2171-J / 02cr0050-J